UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|                            |   |                            |
|----------------------------|---|----------------------------|
|                            | . | Case No. 17-50018-btb      |
| IN RE:                     | . | Chapter 13                 |
|                            | . |                            |
| ASHLEIGH LYNN EASLEY,      | . | 300 Booth Street           |
|                            | . | Reno, NV  89509            |
|                            | . |                            |
|                 Debtor.    | . | Wednesday, April 12, 2017  |
| . . . . . . . . . . . . .  | . | 2:23 p.m.                  |

TRANSCRIPT OF MOTION FOR CONTEMPT FOR VIOLATION OF THE
AUTOMATIC STAY UNDER 362(a) AND DAMAGES AGAINST CREDITOR
CAR LOANS NEVADA LLC AND RAPID NEVADA RECOVERY AND MOTION FOR
TURNOVER OF VEHICLE, MOTION FOR DAMAGES FOR CREDITOR
MISCONDUCT, MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC
STAY, MOTION FOR TURNOVER FILED BY CHRISTOPHER PATRICK BURKE ON
BEHALF OF ASHLEIGH LYNN EASLEY [32]
**BEFORE THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:            CHRISTOPHER PATRICK BURKE, ESQ.
                           702 Plumas Street
                           Reno, NV  89509
                           (775) 333-9277

Also present:              JOHN GRIGGS
                           BARBARA GRIGGS
                           Representing Car Loans Nevada


Audio Operator:            David Lindersmith, ECR


Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

<u>I N D E X</u>
<u>4/12/17</u>

| <u>WITNESS</u><br><u>FOR THE DEBTOR</u> | <u>DIRECT</u> | <u>CROSS</u> | <u>REDIRECT</u> | <u>RECROSS</u> |
|---|---|---|---|---|
| Darryl Easley | 7 | | | |

3

1        (Proceedings commence at 2:23 p.m.)

2              THE COURT:  Good afternoon.  Please be seated.  Next

3   we have the case of Ashleigh Lynn Easley, case number 17-50018.

4   Appearances, please.

5              MR. BURKE:  Good afternoon, Your Honor.  Christopher

6   Burke for Ms. Easley, who is present.

7              THE COURT:  Appearances, please.

8              MR. GRIGGS:  We're representatives from Car Loans,

9   John and Barbara Griggs.

10             THE COURT:  You're representatives of who?

11             MS. GRIGGS:  Car Loans.

12             UNIDENTIFIED:  Car Loans Nevada.

13             THE COURT:  And is Car Loans Nevada a corporation?

14             MS. GRIGGS:  Yes --

15             MR. GRIGGS:  Yes.

16             MS. GRIGGS:  -- Car Loans.

17             THE COURT:  Then you may sit down because individuals

18  are not allowed to represent corporations unless they're

19  lawyers.  Are you lawyers?

20             MS. GRIGGS:  No, our attorney is out of town from --

21             THE COURT:  Who's your attorney?

22             MS. GRIGGS:  Mark Thierman.

23             THE COURT:  Okay.  Did you notify him of this

24  hearing?

25             MS. GRIGGS:  Well, he was already out of town.  He's

4

1 on a boat out in the ocean.

2                THE COURT:  Okay.  All right.

3                MS. GRIGGS:  So we have no way to expedite this.

4                THE COURT:  Well, let me ask you this.  Has the car

5 been returned to this lady?

6                MS. GRIGGS:  No.

7                MR. GRIGGS:  Yes.

8                THE COURT:  Is the car in your possession?

9                MS. GRIGGS:  It's --

10               MR. GRIGGS:  Yes.

11               THE COURT:  Was the stay in place when the car was

12 repossessed?

13               MR. BURKE:  Yes, Your Honor.

14               THE COURT:  Okay.  Did you get relief from the stay?

15               MR. GRIGGS:  Well, I was --

16               THE COURT:  Let me -- answer my question yes or no.

17 Did you get stay relief?

18               MS. GRIGGS:  No.

19               MR. GRIGGS:  No.

20               THE COURT:  Okay.  So here's the deal for today, and

21 you don't need your lawyer.  And then we'll set this for trial.

22 The fine will be $500 a day if you have not returned the car by

23 Friday.  If you have not returned the car by Tuesday of next

24 week, the fine will be a thousand dollars a day.  If you

25 haven't returned the car by Friday, of next week it will be

1   $5,000 a day, and will continue at that rate until the car is

2   returned.  Do you have any questions?

3          MR. GRIGGS:  Is that starting today?

4          THE COURT:  You have till Friday to return the car.

5          MR. GRIGGS:  Okay.

6          THE COURT:  If you haven't returned the car by

7   Friday, you better have a check for $500.

8          MS. GRIGGS:  Yes, sir.

9          THE COURT:  Understand?

10          MR. GRIGGS:  Yes, sir.

11          THE COURT:  Okay.  Mr. Burke --

12          MR. BURKE:  Yes, Your Honor.

13          THE COURT:  -- we're not done yet.

14          MR. BURKE:  Again, I understand you would like the

15   car people to be represented.  I have a request.  With the

16   Court's indulgence, Ms. Easley would like to testify.  There's

17   emotional issues.  The idea of coming back is beyond upsetting

18   to her and I can only express it by her testifying.  However,

19   if the Court thinks it's --

20          THE COURT:  I will let Ms. Easley to make a record.

21          But, Ms. Easley, if you're going to make a record,

22   you're going to be subject to cross-examination by their

23   attorney when we finally have a hearing.  That -- that's just

24   how the system works.  If you get to testify, you get to be

25   questioned by opposing counsel, or by the opposing party if

6

1  they're individuals, or by their counsel if it's a company

2  that's represented by a lawyer.  Do you understand that?

3          MS. EASLEY:  Yes, Your Honor.

4          THE COURT:  Okay.  So please step forward and be

5  sworn.

6          You guys can have a seat.

7          MR. BURKE:  Your Honor, before -- I'd rather her dad

8  testify first because --

9          THE COURT:  Pardon?

10          MR. BURKE:  -- he'll be quick.  Her dad's here to

11  testify --

12          THE COURT:  Oh, that's fine.

13          MR. BURKE:  -- also.  He'll be quick, and he took off

14  from work.

15          THE COURT:  Okay.  Ms. Easley, please have a seat.

16          Mister -- is it Mr. Easley?

17          MR. EASLEY:  Yes, Your Honor.

18          THE COURT:  Mr. Easley, the same will apply to you.

19  You will have to come back and be subject to

20  cross-examination --

21          MR. EASLEY:  Yes, Your Honor.

22          THE COURT:  -- unless this is resolved somehow.  So

23  anyway, please come forward and be sworn.

24          THE CLERK:  Please raise your right hand.

25              DARRYL EASLEY, DEBTOR'S WITNESS, SWORN

D. Easley - Direct                           7

1          THE CLERK:  Thank you.  Please be seated.

2          THE COURT:  Could you please state your full name.

3   Oh, please have a seat first.

4          THE WITNESS:  Yes, thank you.

5          THE COURT:  There's some water here if you need some.

6   If you want to take a break for any reason please let me know.

7          THE WITNESS:  Okay.

8          THE COURT:  Okay.  What's your name, sir?

9          THE WITNESS:  Darryl Easley.

10         THE COURT:  Okay.

11         THE WITNESS:  D-A-R -- do you need me to spell it?

12         THE COURT:  E-A-S-L-E-Y?

13         THE WITNESS:  Yeah.

14         THE COURT:  Okay.  It's a lot like Beesley but

15   without the B?

16         THE WITNESS:  Yes, sir.

17         THE COURT:  So anyway, go ahead.

18                     DIRECT EXAMINATION

19   BY MR. BURKE:

20   Q    Mr. Easley, are you familiar with Ashleigh Easley?

21   A    Yes, I am.

22   Q    And how are you familiar with her?

23   A    I'm her father.

24   Q    Okay.  Do you have a close relationship with her?

25   A    Yes, I do, very close.

D. Easley - Direct                    8

1  Q    How would you describe her personality over the time

2  you've known her?

3  A    Upstanding, honest.  I'm kind of biased.

4  Q    Okay.

5  A    She's very outgoing, active all the way through school,

6  just a good person.

7  Q    And how old is she now?

8  A    Thirty.

9  Q    Okay.

10 A    She gets mad at me if I go over.

11 Q    Okay.  During the time you've known her have you noticed

12 any changes in her over the last few years, say?

13 A    Yes, I have.

14 Q    And when did that occur?

15 A    Just about maybe four or five years ago, getting worse as

16 time goes on.  But she's turned it around --

17 Q    Okay.  And why --

18 A    -- fairly recently.

19 Q    What was she getting worse?  What does that mean?

20 A    She was in an abusive relationship and indulged in alcohol

21 and I don't know what all else, and some other things, but, you

22 know --

23 Q    So there was a period where she was engaging in abusive

24 conduct?

25 A    Yes.

D. Easley - Direct                          9

1  Q    Okay.  Is there a point where that changed?

2  A    Yes, about six months ago, something like that.

3  Q    And what changed?

4  A    She stopped drinking, started going to AA and kind of

5  started to take care of her life.

6            THE COURT:  Let me ask a question before you -- just

7  for clarification.

8            THE WITNESS:  Yes.

9            THE COURT:  You said she was in an abusive

10  relationship.  Was that a --

11            THE WITNESS:  Yes.

12            THE COURT:  -- physically abusive relationship?

13            THE WITNESS:  Some, yes.

14            THE COURT:  Emotionally abusive?

15            THE WITNESS:  Emotionally abusive --

16            THE COURT:  Okay.

17            THE WITNESS:  -- mostly, yes.

18            THE COURT:  But then in addition to that she was

19  abusing alcohol or and perhaps other things?

20            THE WITNESS:  Yes.

21            THE COURT:  Okay.  Thank you.

22            THE WITNESS:  He -- she was the victim of the abuse

23  so --

24            THE COURT:  Well, of the physical or emotional abuse?

25            THE WITNESS:  Physical, physical and emotional.

                          D. Easley - Direct                    10

1              THE COURT:  But she was also then -- I mean we're

2    using --

3              THE WITNESS:  Yes.

4              THE COURT:  -- abuse --

5              THE WITNESS:  Yeah, compounding.

6              THE COURT:  -- two ways --

7              THE WITNESS:  Yes.

8              THE COURT:  -- and using drugs or alcohol.

9              THE WITNESS:  And she was abusing, yes, drugs --

10             THE COURT:  Okay.

11             THE WITNESS:  -- and alcohol.

12   BY MR. BURKE:

13   Q    When she was abusing substances, how would you describe

14   her personality?

15   A    She didn't really have a lot of personality.  She was

16   under the influence a lot, which covered a lot of her emotions

17   and stuff.  And when she would be sober she was, you know,

18   completely down on herself and lost a lot of her drive.

19   Q    Okay.  And then she got sober?

20   A    Yes.

21   Q    And how would you start to describe her personality after

22   she became sober?

23   A    She started coming back, started being herself.

24   Q    You know she's in a bankruptcy right now?

25   A    Yes.

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

D. Easley - Direct                    11

1  Q    Okay.  And she -- you know she has a car that's in a

2  bankruptcy?

3  A    Yes.

4  Q    Okay.  And you're aware that car was taken --

5  A    Yes.

6  Q    -- and was taken a week ago today, April 5th?

7  A    Uh-huh.

8  Q    Okay.  That's a yes?

9  A    Yes.  I'm sorry.

10  Q    In the last week have you noticed a change in her

11  personality?

12  A    Yes, most definitely.

13  Q    How did it change?

14  A    She started talking like she was going to go back down the

15  same road that she came up as far as the -- you know, she --

16  very depressed, started talking again about, you know, world

17  closing in on her again and --

18  Q    What did that mean to you?

19  A    Going back the same path that she was on before with

20  possibly alcohol and worse.

21  Q    What do you mean, worse?

22  A    She's had a lot of bouts with depression, to the point

23  where she had at one time been a danger to herself, I believe.

24  Q    What do you attribute to this change for the worse to be

25  from?

D. Easley - Direct                    12

1  A    She's as much as said it.  You know, every time she tries

2  to stand up on her own two feet and do the right thing, you

3  know, something seems to come along and kick her and knock her

4  back down.

5  Q    And what was the last thing that kicked her?

6  A    The repossession of her car.

7  Q    Have you spoken to her over the last week about that?

8  A    Some.  I found out about it after the fact, not the day

9  that it happened, but I have talked to her.  And we're -- like

10 I said, we're really close so she tells me how she feels.

11 Q    And how would you describe her the last week that -- since

12 you've spoke to her about the repossession how would you

13 describe her personality?

14 A    Depressed, defeated.

15 Q    Okay.  Are you worried about her?

16 A    Yes.

17 Q    Is there anything you'd like to say to the Court?

18 A    Just try to help her get through this, you know try, to

19 get -- the biggest thing that she owns is her car.  And that,

20 right now, that's pretty much the only thing that really

21 defines her, you know, as far as success is the fact that she

22 can, you know, make sure that she has transportation, she has

23 an apartment.  She's trying to do it on her own and, you know,

24 I help her as much as I can, but try to get her feet back under

25 her again.

D. Easley - Direct                        13

1  Q     You're employed, right?

2  A     Yes.

3  Q     Okay.  And you took off today to be here?

4  A     Yes.

5  Q     Okay.  Thank you.

6           MR. BURKE:  I have no further questions, Your Honor.

7           THE COURT:  Okay.  As you are not allowed, since

8  you're not attorneys, to represent the corporation, I'm not

9  going to give you the opportunity to ask questions.  But when

10 your attorney comes, this gentleman will have to come back and

11 be subject to cross-examination by your attorney if he wishes

12 to do that.  Understand?

13          MS. GRIGGS:  Yes.

14          MR. GRIGGS:  Yes, sir.

15          THE COURT:  Okay.  Thanks a lot.  You may step down,

16 sir.

17          THE WITNESS:  Thank you, Your Honor.

18          THE COURT:  I do -- I -- let me interrupt for one

19 second.

20          Would it be possible for you to return the automobile

21 today if Ms. Easley came to your facility?

22          MS. GRIGGS:  Yes, it would.

23          THE COURT:  Okay.

24          Would you be able to take your daughter to the

25 facility to pick up her car?

D. Easley - Direct                    14

1          THE WITNESS:  Yes.

2          THE COURT:  Okay.

3          MR. GRIGGS:  It would actually have to be Rapid

4  Recovery's facility, which Rapid Recovery is right there, so we

5  should be able to work that out.

6          THE COURT:  And they go to Rapid Recovery and recover

7  the car, sort of un-recover it from you?

8          MR. GRIGGS:  I'm sorry, sir?

9          THE COURT:  I said sort of un-recover if from you.

10  They could recover the car by going to your facility?

11          MR. GRIGGS:  Yes, sir.

12          THE COURT:  Don't leave.  Give -- I'm going to ask

13  you to give them the address.  I'm going to suggest to you --

14  you don't have to, but I'm going to suggest to you that the way

15  to do this is to leave from here when we're done --

16          THE WITNESS:  Yes.

17          THE COURT:  -- go pick up the car, so we don't have

18  the issue of potential punitive enforcement.  You'd have your

19  car back earlier, I think would be a good thing.  And you're

20  available to give her a ride so --

21          THE WITNESS:  Yes, definitely --

22          THE COURT:  -- I think that would --

23          THE WITNESS:  -- Your Honor.

24          THE COURT:  -- be the best way.

25          And, sir, I -- could you state your name, please?

15

1            MR. ARTEMIS:  Sir, Ray Artemis, sir.

2            THE COURT:  And, sir, are -- your facilities are here

3  in Reno?

4            MR. ARTEMIS:  Yes, sir.

5            THE COURT:  Okay.  Thanks.  So just have a seat, if

6  you don't mind.

7            MS. GRIGGS:  Your Honor, when you stated that we had

8  to return the vehicle, I had made every -- I had made it in my

9  mind to get together with them after Court and get it back to

10 her today --

11           THE COURT:  I appreciate that.

12           MS. GRIGGS:  -- immediately.

13           THE COURT:  It just occurred to me that that was a

14 better idea than what I had said, if that was possible --

15           MS. GRIGGS:  It is possible --

16           THE COURT:  -- so --

17           MS. GRIGGS:  -- and that's what I --

18           THE COURT:  Okay.

19           MS. GRIGGS:  -- had intended to do.

20           THE COURT:  Thank you.  I'm glad to hear that.

21           So you may step down, sir.

22      (Witness excused)

23           THE COURT:  Next witness, please.

24           MR. BURKE:  Ms. Ashleigh Easley.

25           THE COURT:  Ms. Easley, would you please step forward

1  and be sworn.

2        (This portion under seal from 2:36 p.m. to 3:16 p.m.)

3            MR. BURKE:  Judge, I have nothing further.

4            THE COURT:  Well, we're going to defer this until

5  counsel for the defendants are available.

6        (Court and clerk confer)

7            THE COURT:  So here's what I'm going to do.  I'm

8  going to order a transcript of this, and that'll be available

9  to your attorney when he comes back into town so he knows what

10  went on and can prepare himself for a cross-examination when we

11  get back to the trial.  I -- do you have any questions?

12            MS. GRIGGS:  I have nothing further.

13            THE COURT:  Okay.  Sir?  Sir?

14            MR. GRIGGS:  No, sir.

15            THE COURT:  Mr. Larson [sic], no?

16            MR. ARTEMIS:  I'm sorry, sir.  I --

17            THE COURT:  Just asked if you had any questions.

18            MR. ARTEMIS:  No, sir.

19            THE COURT:  Okay.

20            So I do have a question for you which isn't -- which

21  is related to what happened here, but -- then just let me tell

22  you this, and not a question, actually, but if you've -- you

23  need to check, in bankruptcies, to see if the stay has been

24  lifted or you need to get the stay lifted before you can

25  attempt to repossess a vehicle that somebody -- when somebody's

17

1    filed.  You just can't go ahead and do that.  This may have
2    been an aberration.  This may be your first time dealing with
3    this, I don't know.  But you just can't -- if this -- if
4    someone's filed a bankruptcy, you have to have stay relief
5    before you can do anything to attempt to collect a debt from
6    them, to collect the collateral, anything like that.  You just
7    need to be aware of that.
8              Car business, I know, is very difficult.  I know
9    there's lots of defaults.  I know you have problems with this
10   kind of stuff, but you just have to do that.  That's all I'm
11   saying.
12             MS. GRIGGS:  I --
13             THE COURT:  Yes, sir.
14             MS. GRIGGS:  -- I understand that, Your Honor.  And
15   if at any time in the last six months the attorney had even
16   returned a phone call, we would've known that.  But we
17   attempted to contact this attorney per --
18             MR. GRIGGS:  His attorney.
19             MS. GRIGGS:  -- our attorney's instructions and never
20   received a response back.
21             THE COURT:  Well, he's not -- you're not his client.
22   He's not responsible.  I mean you're charged with knowledge of
23   the Bankruptcy Code and the existence of the automatic stay,
24   whether -- I don't know if your attorney told you that or not,
25   but opposing counsel is not required to talk to you.  As a

18

1   matter of fact, in most cases opposing counsel can't talk to

2   you if you're represented by an attorney.  That would be

3   improper.  Okay.

4              Yes, sir?

5              MR. ARTEMIS:  Sir, question.

6              THE COURT:  Yes, sir.  Could you please come forward

7   so we can --

8              MR. ARTEMIS:  Yes, sir.

9              THE COURT:  -- put you on the record?

10             MR. ARTEMIS:  My name's Bill Artemis and --

11             THE COURT:  I didn't call you by the right name.  I'm

12  sorry.

13             MR. ARTEMIS:  I'm sorry.

14             THE COURT:  Mr. Artemis.

15             MR. ARTEMIS:  I work for the -- I actually have the

16  repossession company that's caught right in the middle of this.

17             THE COURT:  Right.

18             MR. ARTEMIS:  Do we need independent counsel or --

19             THE COURT:  Do you have an attorney, generally?

20             MR. ARTEMIS:  We do.

21             THE COURT:  I would talk to your attorney and see

22  what he or she advises you.  I think you need to let them know

23  what's going on.  I think you need to talk them.

24             MR. ARTEMIS:  Okay.

25             THE COURT:  That -- I mean that's really all the

1  advice I can give you, but I think you need to do that.

2          MR. ARTEMIS:  Sir, I understand.

3          THE COURT:  Understood.  Thank you.

4          MR. ARTEMIS:  Thank you, sir.  Have a good day.

5          THE COURT:  Okay.  May this witness step down?

6          MR. BURKE:  Yes, Your Honor.  I'll pass her for now.

7  I did have some other things but --

8          THE COURT:  That -- that's fine.

9          MR. BURKE:  Okay.  Yes, she may step down.

10          THE COURT:  Okay.  And so you're not being released

11  from Mr. Burke's direct examination.  You'll be back here in

12  August for the trial itself.  Opposing counsel will be here at

13  that time.  Opposing counsel will have a copy of the transcript

14  of your testimony.  It will be -- he will be subject to the

15  seal in the sense that he cannot -- he or she cannot disclose

16  that to anyone other than to his clients.  And we'll just go

17  forward from there.

18          THE WITNESS:  Thank you, Your Honor.

19          THE COURT:  Okay.  Thank you very much.

20          THE WITNESS:  All right.

21      (Witness excused)

22          THE COURT:  So I think that's really about the extent

23  of what you can do.  I don't think you can argue --

24          MR. BURKE:  Right.  I did want to question them but

25  without the attorney --

20

1              THE COURT:  No, I think their attorney needs to be

2  here.

3              MR. BURKE:  Right.

4              THE COURT:  And I understand you want to get your

5  client's testimony because it's fresh in their mind and it's an

6  emotional experience.  I do understand that and that makes

7  sense.

8              MR. BURKE:  And I appreciate the Court's indulgence.

9              THE COURT:  Okay.  Anything further on this matter?

10             MR. BURKE:  Just the continued date.

11             THE COURT:  Okay.

12             THE CLERK:  We need a date, Your Honor.

13             Counsel, how long do you anticipate it to take?  How

14  many days?

15             MR. BURKE:  Oh, half a day or a day at the most.

16             THE CLERK:  Okay.

17             THE COURT:  So what Mr. Burke is suggesting is that

18  this trial would take about half a day.  Why don't we set it

19  for a full day.  Not a lot happens in half days typically

20  because it usually takes a full day.

21             So what do we have in about -- what's our best one

22  day?

23             THE CLERK:  Your Honor, our first available is

24  Monday, July the 31st.

25             THE COURT:  Okay.  So do you guys have your calendars

21

1 with you?

2          MS. GRIGGS:  I will have to contact the attorney's

3 office and find out if he's available.

4          THE COURT:  And have the attorney contact the Court.

5 If that's not an available day we can find another available

6 day because I'm not trying to inconvenience your attorney.  I

7 understand he's out of town.  What is his name?

8          MS. GRIGGS:  Mark Thierman.

9          THE COURT:  T-H-I --

10          MS. GRIGGS:  -- E-R-M-A-N.

11          THE COURT:  Okay.  All right.  All right.  Thank you,

12 guys, very much for coming in.  We'll be at recess.  I will see

13 you, when?  July --

14          THE CLERK:  July the 31st, Your Honor --

15          THE COURT:  July the 31st.

16          THE CLERK:  -- at 10 a.m.

17          THE COURT:  All right.  Thank you very much.

18          MR. BURKE:  Thank you.

19          THE CLERK:  All rise.

20      (Proceedings concluded at 3:22 p.m.)

21                         *  *  *  *  *

22

23

24

25

22

1          **C E R T I F I C A T I O N**

2

3          I, Lisa Luciano, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9   _____

10  LISA LUCIANO, AAERT NO. 327      DATE:  May 18, 2017

11  ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

