SCOTT N. TISEVICH, ESQ.
NV Bar #5525
241 Ridge St. – Suite 300
Reno, NV 89501
775-786-8926
*Attorney for Creditor*
*Car Loans Nevada, LLC*

Electronically Filed: July 21, 2017

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

IN RE:

ASHLEIGH LYNN EASLEY,
         **Debtor**

_____/

Case No: BK-N 17-50018-btb
Chapter   13

Cont'd Hearing Date: 7/31/2017
Time:                                  10:00 AM

**CREDITOR CAR LOANS, LLC
SUPPLEMENTARY
OPPOSITION TO MOTION
FOR CONTEMPT**

    Comes Now the Creditor CAR LOANS, LLC by and through its attorney of record, SCOTT N. TISEVICH, and offers its Opposition to the Debtor's Motion for a finding of Contempt for violation of the automatic stay.

    This Opposition is filed within approximately 10 days of the date scheduled for the continued evidentiary hearing of July 31, 2017. However, the original hearing on Debtor's Motion was originally heard on April 12, 2017. Creditor received Notice of that hearing on Monday, April 10, 2017. Creditor had not engaged counsel, and was not represented at that hearing. No formal Opposition was filed in connection with the April 12th hearing  The Transcript of the Hearing on Debtors Motion for Contempt indicated that two of the Company's employee's were present and stated on the record  that the Company had notice of the filing, the Debtor's vehicle was in the Company's possession, and that they had not sought relief from the automatic stay.

- 1 -

In light of these circumstances, Creditor CAR LOANS, LLC deeply regrets the actions undertaken on its behalf. The Creditor does not dispute that it (and its corporate officers) had actual notice of the Debtor's bankruptcy case, and of the continuation of the automatic stay with respect its secured loan. The Company respects the requirement to cease collection activity once bankruptcy protection is invoked. It has policies in place to prevent violations of the bankruptcy stay, which unfortunately, were not followed in this case.

However, Creditor CAR LOANS, LLC also argues, in mitigation of the damages claimed, that the Debtor failed to take reasonable measures to minimize her damages and that its actions were not the proximate cause of such damages as may exist.

In addition, creditor urges the Court to consider, in evaluating the circumstances of the events complained-of, the fact that the actual repossession of the vehicle occurred as a result of a mistaken belief on the part of one employee, and the actions of a independent contractor who was given correct information by the Debtor, and nonetheless proceeded with the repossession.

This Opposition is supported by the Memorandum of Points and Authorities set forth below, the Affidavit(s) of Creditor, the Transcript of Hearing and the other related papers and pleadings already on file in this matter.

Dated this July 20, 2017.

/s/ Scott N. Tisevich, Esq.
Scott N. Tisevich, Esq.
Attorney for Car Loans Nevada LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

**1. Factual Background.**

The factual background stated by opposing counsel's Motion for contempt accurately reflects the filing date of the case and the sequence of events which occurred at Debtor's residence on April 5, 2017.

Although not represented by counsel at the April 12th hearing, two employees of the creditor were present in Court[1] that day and went on record as acknowledging possession of the Debtor's vehicle and that the Company did not seek relief from the automatic stay. ( See Transcript of Hearing on Motion for Contempt for Violation of Automatic Stay, April 12, 2017 at pp. 3-4 Debtor's vehicle was returned to her later that day).

Within the CAR LOANS, LLC organization, the Borrower Relations Manager has functional responsibility for initiating orders for the repossession. As of mid-February, that position was filled by one Anthony Moran. Mr. John Blackwell (whose Affidavit is filed contemporaneously herewith) had assumed this position as of approximately March 1, 2017. (Affidavit of John Blackwell, p 2, line 9,10). As of April 5, 2017, Mr. Blackwell believed -- mistakenly – that the Debtor's bankruptcy stay had expired and was not then in force. (Affidavit of John Blackwell, p.2 , line 24-26). Based on that belief, he then authorized the repossession through outside contractor Rapid Recovery, LLC .

There is no dispute that the Debtors' Notice of Continuation of the Automatic Stay dated February 14, 2017 was received by the Creditor. However, the document was delivered shortly at about the same time as Mr. Moran's tenure as Borrower Relations Manager was ending and just prior to Mr. Blackwell's starting. (Mr. Blackwell did not locate the Continuation Order until just before the April 12th hearing).

---

[1] For reasons unknown, the Creditors managers who were present at the April 12, 2017 hearing were identified by the Court Reporter as "John and Barbara Griggs." The actual identities of the persons present were Barbara Mearse, who is the Creditor's Managing Agent of its Reno office, and John Blackwell, whose title is Borrower Relations Manager.

At April 12th hearing, Mr. Blackwell was one of the Company employees present. On behalf of the company, he agreed for the prompt return of Debtor's vehicle, which was accomplished later that afternoon.

**2. Debtor Did Not Take Reasonable Measures to Mitigate Her Damages.**

The repossession occurred late in the afternoon of April 5, 2017 (approximately 3:45 pm, according to the Declaration of Kimberly G. Wilson, attached as Exhibit B to the Debtors Motion for Contempt, at p.2). The time stamp on the Debtor's Motion for Contempt indicates that it was filed at approximately 12:29 PM on April 7, 2012 (a Friday). The vehicle was returned to her possession late in the afternoon of April 12, 2017 (after the hearing).

There was no intention on the part of the creditor to deprive Debtor of her vehicle in violation of the bankruptcy court's requirements. The direct cause for initiating the repossession was the Borrower Relations Manager's mistaken belief that the automatic stay had not been extended.

However, once it became obvious that the Creditor was acting from a mistake of fact, the vehicle could have been returned immediately had there been at least a phone call from debtor's counsel to explain that they had been granted a continuation of the automatic stay. (Ms. Wilson's Declaration indicates that she related the January 2017 bankruptcy filing to the tow truck driver, but doesn't say whether she also mentioned the continuation order). Had the simple expedient of a demand letter or notice to Creditor been provided, there would have been no need for the Debtor to wait through the weekend to get the car back.

**3. The Repossession of Debtor's Vehicle was Not a Willful Effort to Violate the Automatic Stay. The Repossession Occurred Due to Negligence and Mistake.**

Defaults on secured loans are common occurrences in the lending industry. When one of CAR LOANS, LLC's customers seeks relief from enforced collections activity, the Company has procedures in place which are intended to prevent violations of the bankruptcy automatic stay. These procedures include both hard-copy paper files (which include correspondence and legal notices received) as well as the company's electronic collections management software. Normally, the system will flag accounts where a bankruptcy stay is in effect. (The court may note that in the

- 4 -

Debtor's previous Chapter 13 bankruptcy case (*In Re: Ashley Lynn Easley*, District of Nevada Case **BKN 15-50210**, filed 02/20/2015; dismissed 1/06/2017) the Creditor abided the ongoing lack of post-petition payments and did not take action to repossess the vehicle. In that prior case, the internal controls worked. There also does not appear to be any history of violations. (A PACER inquiry on "CAR LOANS" indicates that aside from the instant case, there are no other cases in which the Creditor has been identified as a party).

In the instant case, the circumstance which triggered the improper action was not animus toward the Debtor or lack of respect for the Orders of this court. Rather, after the company received notice of the continuation of the automatic stay, the person directly in charge of maintaining the records of such legal process was replaced by someone new. As described in the Affidavit of John Blackwell, after he replaced the Company's previous Borrower Relations Manager, he was aware of the Debtor's re-filing of her Chapter 13. He believed that when a second bankruptcy case is filed shortly after dismissal of an earlier case, that the automatic stay would expire. Thus, when he authorized the repossession of Debtor's vehicle, he believed that the stay had expired (Affidavit of John Blackwell, p.2, line 24-26). Mr. Blackwell did not discover that the Continuation Order had been received by his predecessor until some point before the April 12th hearing.

The Declarations attached to Debtor's Motion for Contempt indicated that the tow truck driver[2] was told of the pending bankruptcy by both the Debtor and the assistant to opposing counsel. Regardless of whether the tow-truck operator contacted Mr. Blackwell on the afternoon of April 5, 2017 to confirm the repossession[3], but if he had, the driver would most likely have been given information based on Mr. Blackwell's mistaken belief that the stay had expired.

---

[2] At the first hearing on this matter on April 12, 2017, the tow truck driver was present in court and identified himself as Bill Artemis, who is an owner of the repossession company, Rapid Recovery Inc.

[3] As of this writing, the Creditor and Rapid Recovery find themselves in disagreement as to whether there was a confirmation of the repossession order after the driver spoke to Debtor's counsel's office, but before leaving Debtor's residence.

- 5 -

Creditor does not mean to suggest that the tow truck driver should be conversant with the nuances of Code Section 362(c)(3). However, being cognizant of the effect of getting notice of a bankruptcy stay is fundamental.

In retrospect, at 3:45 PM on April 5, 2017, once the driver was given actual notice that the bankruptcy stay was still in effect --by a person speaking on behalf of the Debtor's attorney– the prudent course would have been to stand down. As a matter of general policy, standing down is the only reasonable way of preventing improper repossessions to guard against the possibility of a late-breaking change in circumstance ( such as a newly issued Court Order, or, as in this case, a mistake of fact by the loan company). A brief delay would obviously allow the creditor or its attorney to conduct a more formal inquiry into the status of the bankruptcy stay. Here, the last clear chance to avoid the harm from the improper repossession in this case was with the driver. The court should not impute to CAR LOANS, LLC the element of malicious intent to make this case a willful violation of the automatic stay.

**4. In absence of a Willful Violation, Debtor's Sanctions Should be Limited to Actual Damages.**

11. U.S.C. 362(k)(1) provides the general rule that an individual debtor injured by a willful violation of the automatic stay shall recover actual damages, and in appropriate cases punitive damages. However, Section 362(k)(2) further provides that if the stay violation occurred in the good faith belief that the rule in Section 362(h) applied (the automatic stay expires in 30 days unless ordered by the Court), then the recovery should be limited to just the actual damages.

In this case, the person within creditor's organization who authorized the repossession was new to his position, and was unaware that a few days before he started, that there actually had been a Continuation of the Automatic Stay. Since this was a re-filed Chapter 13, the employee mistakenly believed that the stay had expired 30 days after filing, but failed to confirm that there had been no additional orders regarding this case (either by consulting counsel or directly contacting the bankruptcy court). In such circumstances, there is no indication of maliciousness or other animus toward the debtor as would warrant a finding of willfulness.

### 4. Conclusion.

Responsibility for the repossession of the Debtor's vehicle rests with Creditor CAR LOANS, LLC. As such, the extent of the sanctions to be imposed is a matter within the discretion of the court.

In making the determination of sanctions, the Creditor urges that the goal should be to deter re-occurence of such actions. With this Creditor, there has not been any history of repeated stay violations. The Creditor's internal controls have prevented such situations in the past. Unfortunately, these controls broke down in this case. The Creditor shall work with its staff to implement further controls governing their enforced collections (such as getting clearance from counsel for each case involving a bankrupt loan customer).

In light of these events, CAR LOANS, LLC respectfully requests that the court find that the stay violation was not willful, and was the simple product of an employee's lack of awareness that an Order continuing the automatic stay had been issued. On such a finding, the sanctions imposed should be limited to such amounts as are necessary to prevent further violations.

Dated this July 20, 2017.

/s/ Scott N. Tisevich, Esq.
Scott N. Tisevich, Esq.
Attorney for Car Loans Nevada LLC

## CERTIFICATE OF SERVICE BY MAIL

Pursuant to FRBP 7005 and FRCP 5(b), I certify that on the 21st day of July, 2017, I caused to be served a true and correct copy of Creditor Car Loans LLC Supplementary Opposition to Motion for Contempt to all interested parties on the ECF System and the following persons served by US Postal Service with postage prepaid as indicated below:

__X_  By Notice of Electronic Filing: through Electronic Case filing System of the Untied States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

CHRISTOPHER P. BURKE, ESQ    Attyburke@charter.net

WILLIAM A. VAN METER    c13ecf@nvbell.net, wvanmeter13@ecf.epiqsystems.com

_____  Personal Delivery: by placing the document listed above in a sealed envelope with postage prepaid in the United States mail at Reno, Nevada and addressed as set forth below:

Dated this 21st day of July, 2017.

/s/ Sue C. Birrell

Sue C. Birrell

Legal Assistant to Scott N. Tisevich, Esq.