CHRISTOPHER P. BURKE, ESQ.
Nevada Bar No.: 004093
attycburke@charter.net
702 Plumas St.
Reno, Nevada 89509
(775) 333-9277
Attorney for Debtor:
Ashleigh Lynn Easley

*ECF FILED ON* 3/02/18

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ASHLEIGH LYNN EASLEY<br><br><br><br><br>          Debtor. | Case No.: BK-N-17-50018-BTB<br>Chapter 13<br><br>Hearing Date: 5/17/18<br>Hearing Time: 10:00 a.m. |

## MOTION FOR CONTEMPT AND ORDER TO COMPEL PAYMENT FROM CREDITOR, RAPID RECOVERY INC.

COMES NOW, Debtor, ASHLEIGH LYNN EASLEY ("Debtor"or "Ms. Easley"), by and through her counsel, Christopher P. Burke, Esq., ("Burke"), and files this Motion for Contempt and Order to Compel Payment from Creditor, Rapid Recovery Inc. ("Creditor" or "Rapid Recovery").

### I

### FACTS

On April 7, 2017, Ms. Easley filed a Motion for Contempt for Violation of the Automatic Stay Under §362(a) and Damages against Creditor, Car Loans Nevada LLC ("Car Loans") and Creditor, Rapid Recovery Inc. ("Rapid Recovery") (Dkt. #32). On August 30, 2017, this Court awarded Ms. Easley $100,000 in emotional distress damages and $50,000 in punitive damages pursuant to her Motion for Contempt (Ex. 'A' - Dkt. #70). Creditor, Rapid Recovery, was jointly and severally liable with Car Loans for $10,000 in emotional distress damages and $5,000 in punitive damages.

1    On or about November 6, 2017, Car Loans LLC, but *not* Rapid Recovery appealed
2    that decision. BAP 17-1323.  Car Loans then dismissed its appeal on December 27, 2017
3    (Dkt. 8).

4    Since then, Counsel for Ms. Easley, Christopher Burke Esq. ("Burke") has sought
5    payment from Rapid Recovery for the $15,000 on several occasions.  To date, no
6    payment has been made.  In particular, on December 28, 2017, Burke sent an email and
7    letter to Jared Beckman ("Beckman"), requesting his client Rapid Recovery pay by
8    January 12, 2018.  The parties spoke after that, but no agreement was made or money
9    received.  Then, on January 26, 2018, Burke sent a follow up email requesting that the
10    payment be made no later than February 5, 2018.

11    On February 15, 2018, after doing nothing for ten days, Beckman sent an emailed
12    letter requesting another thirty (30) to forty-five (45) days to pay, while they "attempt to
13    resolve all claims by and against all parties in this matter."  In response, on February 16,
14    2018, Burke communicated that another delay is *not* acceptable and that Rapid
15    Recovery had been given plenty of time to comply with this Court's Order which was
16    entered six months ago, on August 30, 2017, adding that he would be filing the Motion
17    for Contempt and to Compel payment "next week" (i.e. by February 23, 2018).
18    However, Burke still waited until March 1, 2018, almost two weeks after his last email,
19    and six (6) months since this Court's Order was signed (Dkt. 70), before filing this
20    motion, because Rapid Recovery still has not paid or responded to that email.

**II**

**ARGUMENT**

**A.    This Court should Compel Rapid Recovery to Pay**

24    To date, Rapid Recovery has ignored this Court's order to pay damages.  Under
25    Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary
26    or appropriate to carry out the provisions of this title."  Courts have used Section 105 to
27    remedy violations of court orders.  *In re Cano*, 410 B.R. 506, 540 (Bankr.S.D. Tex.

2009).  Bankruptcy Courts hold civil contempt powers under §105(a), with "broad discretion to fashion a remedy for civil contempt."  *In re Workman*, 392 B.R. 189, 195 (Bankr. D.S.C. 2007); *see also In re Rimsat, Ltd.*, 212 F. 3d 1039, 1049 (t7th Cir. 2000) (stating that bankruptcy court was justified in using §105(a) "in order to ensure that all the culpable parties received an appropriate sanction").

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnor violated a specific and definite order of the court. " *In Re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003).  For purposes of finding creditors in contempt, the creditors act willfully if they: (1) knew the order was applicable and (2) intended the actions which violated the order.  See *In re ZiLOG, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006).  Whether the creditor intended to violate the subject order or not.  *In re Dyer*, 322 at 1191.  Here, both prongs are met.  Why? Because (1) there is no question Rapid Recovery has knowledge of this Court's order; and (2) it is also equally clear, that Rapid Recovery has not paid pursuant to that Order.  It is now, over five months later, and Creditor still has not paid.

Despite, both prongs being met, Rapid Recovery has failed to comply with this Court's order, nor has it appealed this Court's order.  If a person to whom a court directs an order believes that order is incorrect, the remedy is to appeal, but absent a stay, ***he must comply promptly with the order pending appeal***.  This principle was articulated by the U.S. Supreme Court in *Maness v. Meyers*, 419 U.S. 449, 458 (1975), although its origin relates back in the Court's case law to at least 1922 with *Howat v. Kansas*, 258 U.S. 181 (1922).  The Ninth Circuit frequently applies this rule.  *See, e.g., Espinosa v. United Student Aid Funds*, 553 F.3d 1193, 1205 (9th Cir. 2008) (holding that a creditor is not free to violate a bankruptcy court order because it has doubts as to the validity of the order) *aff'd*, 559 U.S. 260, 279 (2010); *United States v. Galin*, 222 F.3d 1123, 1127 (9th Cir. 2000).  Here, Rapid Recovery has never appealed. Thus, it has no excuse for not complying with this Court's order and paying promptly.

3

**B.____This Court Can Sanction Rapid Recovery for Its Contempt Under Two Separate Legal Authorities.**

This Court has the power to sanction Rapid Recovery for its contempt under: (1) its inherent powers; and (2) 11 U.S.C. §105(a).

*(1) Court's Inherent Civil Contempt Authority and Power to Sanction.*

In *Chambers v. NASCO*, Inc.*,* 501 U.S. 32, 42-47 (1991), the Supreme Court held that Article III courts have an "inherent authority" to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. In *In re Rainbow Magazine*, Inc.*,* 77 F.3d 278, 284 (9th Cir.1996), the Ninth Circuit held that bankruptcy courts, like district courts, also possess that inherent power. *See also In re FJ Hanshaw Enterprises Inc*, 244 F.3d 1128 (9th Cir. 2001) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders."). The inherent authority derives not from statutory grants but rather from the very creation of the court (unless Congress intentionally restricts those powers). *In re Dyer*, 322 F.3d 1178, 1189-90 (9th Cir. 2003); *See also In re Cano*, 410 B.R. 506 (Bankr. S.D. Texas 2009)(Bankruptcy Courts have both inherent contempt authority and equitable authority under §105. The two are not indistinguishable. The former is inherent to all courts, while the latter is rooted in statute.

*(2) Sanctions Under Section 105.*

This Court also has the power to impose civil contempt sanctions under §105(a). *See Dyer*, 322 at 1178, 1189-90 (commenting on the "permissive nature of the contempt authority" and reviewing a bankruptcy court's decision to impose contempt sanctions for an abuse of discretion); *see also In re Bassett*, 255 B.R. 747, 757-58 (9th Cir. BAP 2000) (noting that bankruptcy courts have broad discretion in determining whether to issue orders to show cause regarding contempt and, thereafter, in fashioning a remedy for proven violations of the discharge injunction), *aff'd in part*, *rev'd in part on other*

4

*grounds,* 285 F.3d 882 (9th Cir. 2002);

Section 105 does not require a court to use the least restrictive means to carry out the requirements of the Code. Section 105(a) does not say that the Court's authority is limited to orders or judgments *necessary* to carry out the Code. Rather, Congress explicitly added to the statute deferential, discretionary language with "or appropriate." The Supreme Court has emphasized the Court's broad authority under §105 and the need to apply this Code section according to its terms.  *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373-76 (2007). (Under § 105, bankruptcy courts have "broad authority … to take any action that is necessary or appropriate 'to prevent the abuse of process.'")

When an order "has been ignored and undermined, §105 permits this Court to take any action or make any determination necessary to enforce its confirmation order and set this case on the right course." *In re Payne,* 387 B.R. 614, 639 (Bankr. D. Kan. 2008).  Thus, courts have often used §105(a) to remedy violations of its order. *Cano,* 410 B.R. at 540.

## C.   Various Forms Of Sanctions and Damages Are Available To This Court To Compensate Ms. Easley And Coerce Rapid Recovery To Comply With Its Order.

The civil contempt powers under §105(a) empower this Court to sanction the offending party.  Such sanctions "must either be compensatory or designed to coerce compliance." *Dyer*, 322 F.3d at 1192; *See also: Am. Airlines Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir.2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complaint for losses sustained."). As explained in *Dyer*, the sanctions associated with civil contempt include, compensatory damages, attorney fees, and the offending creditor's compliance. *Id*. at 1193 (citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). *Dyer*

1    also concluded that "relatively mild noncompensatory fines" might be necessary under

2    some circumstances, and within the Court's inherent power, but ultimately rejected any

3    ability for imposition of "serious" punitive sanctions. *Id*. at 1194-95.

4        The contempt authority conferred on bankruptcy courts is a *civil* contempt

5    authority. As such, it authorizes only *civil* sanctions as available remedies. *In re Dyer*,

6    322 F.3d 1191. The Ninth Circuit has explained the difference between civil sanctions

7    and criminal sanctions: Civil penalties must either be compensatory or designed to

8    coerce compliance. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d

9    1128, 1137-38 (9th Cir.2001). Compensatory civil sanctions include actual damages such

10   as attorneys fees, costs and emotional distress. *See In re Dawson*, 390 F.3d 1139, 1148

11   (9th Cir. 2004). Coercive sanctions are used to coerce or compel compliance with court

12   orders and should be awarded to the party, as opposed the court. *See F.J. Hanshaw*, 244

13   F.3d at 1138; *See also Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S.

14   821, 827-34 (1994).

**D.    Ms. Easley Should Be Awarded Additional Attorneys Fees and Costs As Actual Damages for Having to File this Motion.**

17       If a bankruptcy court finds that a party willfully violated the discharge injunction,

18   it may award sanctions in the form of compensatory damages, including attorney's fees.

19   *Espinosa v. United Student Aid Funds*, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008),

20   *aff'd,* 559 U.S. 260 (2010); *In re Dyer*, 322 F.3d at 1195. A bankruptcy court may include

21   in its compensatory civil contempt award reasonable attorney's fees incurred during the

22   entirety of the contempt proceedings - even those incurred after the violative conduct

23   has been set aside. *In re H Granados Commc'ns, Inc.*, 503 B.R. 726, 734-35 (9th Cir.

24   BAP 2013). In this respect, *In re H Granados Commc'ns, Inc.* is consistent with the

25   Ninth Circuit's broad general statements regarding the injured party's entitlement to

26   recover attorney's fees as an element of compensatory civil contempt sanctions. See, e.g.,

27   *In re Dyer*, 322 F.3d at 1195 ("attorneys fees are an appropriate component of a civil

1    contempt award"); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) ("an award of
2    fees and expenses is appropriate as a remedial measure").

3         Ms. Easley will have incurred attorneys' fees and costs of approximately $2,500 to
4    bring this motion and see it through hearing and entry of order. In addition, Ms. Easley
5    projects total costs of $50. These are actual damages to Ms. Easley caused by Rapdi
6    Recovery. But for Rapid Recovery's failure to abide by the Sanctions Order, this motion
7    would not have been filed and a hearing before this Court would not need to occur and
8    new orders would not have been entered.  Rapid Recovery should be required to pay all
9    such attorneys fees and costs.

10   **E.    This is the Second Time Rapid Recovery has Willfully Violated This
        Court's Orders, and Ms. Easley Should Be Awarded More Significant
11       Coercive Sanctions.**

12        Rapid Recovery violated the Court's automatic stay order.  Now, Rapid Recovery
13   has failed to pay pursuant to the Court's damage order.  The case of *In International
14   Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994), held "a
15   contempt sanction is considered civil if it is remedial, and for the benefit of the
16   complainant and criminal if it is punitive, to vindicate the authority of the court." *Id*. at
17   827-28. A sanction is civil and remedial if it either `coerces the defendant into
18   compliance with a court's order, or... compensates the complainant for losses sustained.
19   *Id*. at 829. Rapid Recovery should be ordered to pay all of the sanctions and damages
20   within 14 days at the risk of additional sanctions.

21                                          **IV.**

22                                      **Conclusion**

23        Based on the foregoing, Rapid Recovery should be ordered to pay the damage
24   amount within one week of the Court hearing or post a bond for the entire amount.
25   Further, Ms. Easley requests an order finding Rapid Recovery in contempt of Court and
26   awarding actual damages incurred by Ms. Easley as follows:

27

28                                            7

a. Attorneys fees in an amount to be determined by this Court through a hearing on this Motion, plus any additional related fees incurred thereafter, payable to Christopher P. Burke, Esq., for the attorneys' fees incurred by Ms. Easley in enforcing the terms of this Courts prior order.

b. Costs in the amount of $50 incurred in connection with this Motion.

c. Coercive civil contempt sanctions of $1,000 per day commencing August 30, 2017, or February 5, 2018 at the latest, and continuing through the date Rapid Recovery ultimately complies with this Court's Sanctions Order.

d. Payment of the original sanction order. and

e. Such other relief as deemed appropriate by this Court.

DATED this 2ND day of March 2018.

/s/ CHRISTOPHER P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
Nevada Bar No.: 004093
702 Plumas St.
Reno, Nevada 89509
(775) 333-9277
attycburke@charter.net
Attorney for Debtor:
Ashleigh Lynn Easley

8